IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LINDA ESTES,

        Plaintiff,

v.                                        No. 18-CV-293-JCH

MAXIM HEALTHCARE SERVICES, INC.,
D/B/A MAXIM STAFFING SOLUTIONS,
AND JEREMY SOLANO,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion to Remand, [Doc. 6], Plaintiff's Motion for Leave to File Amended Complaint for Damages, [Doc. 8], and Defendant Maxim's Motion for Leave to Amend its Answer and Defenses to Plaintiff's Complaint, [Doc. 31]. Having reviewed the motion to remand and brief in support, the Defendants' response, the Plaintiff's reply, and all the relevant legal authorities, the Court concludes that Plaintiff's Motion to Remand should be granted because Defendants failed to remove the case in a timely manner. The case will be remanded to state court, and the other motions will remain pending.

## BACKGROUND

On March 29, 2017, Plaintiff Linda Estes, a New Mexico citizen, filed a lawsuit in state court against Defendant Maxim Healthcare Services, a Maryland citizen, and Defendant Jeremy Solano, a New Mexico citizen, alleging five counts: (1) violations of the New Mexico Human Rights Act ("NMHRA"); (2) breach of implied contract; (3) assault and battery; (4) negligence; and (5) punitive damages. [Doc. 1-1 at 4 of 10]. The complaint states, *inter alia*, "Plaintiff has

suffered damages including, but not limited to emotional distress and lost wages." [Doc. 1-1 at 6 of 10]. It also asserts a claim for punitive damages. [Doc. 1-1 at 8 of 10].

Almost one year later, on March 20, 2018, Defendants deposed the Plaintiff. [Doc. 1 at 3]. Then on March 28, 2018, nearly a year after Plaintiff initially filed suit in state court, Defendants filed their Notice of Removal. *Id.* Defendants contend that the case had just become removable because at the Plaintiff's deposition they discovered for the first time that the amount in controversy exceeded $75,000. Defendants further argue that Plaintiff fraudulently joined Defendant Solano to defeat this Court's diversity jurisdiction. *Id*. at 3.

In her Motion to Remand, Plaintiff asserts that Defendants were in possession of information regarding the amount in controversy well before her deposition and therefore they did not remove the case in a timely manner. Plaintiff also argues that this Court does not have diversity jurisdiction because Defendant Solano was properly joined to this lawsuit. Plaintiff also filed a Motion for Leave to Amend seeking to add a claim against Defendant Solano. Finally, Defendant Maxim seeks to amend its answer to include a defense alleging that Plaintiff did not follow the statutory requirements under the NMHRA.

## **STANDARD**

Federal courts are courts of limited jurisdiction, and there is a presumption against removal jurisdiction, which the defendant seeking removal must overcome. *See Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982); *see also Martin v. Franklin Capital Corp.*, 251 F.3d 1283, 1290 (10th Cir. 2001). Removal statutes are to be strictly construed, and all doubts are to be resolved against removal. *Fajen*, 683 F.2d at 333.

Defendants removed this case to federal court based on diversity jurisdiction. To invoke diversity jurisdiction, "a party must show that complete diversity of citizenship exists between the adverse parties and that the amount in controversy exceeds $75,000." *Dutcher v. Matheson*, 733 F.3d 980, 987 (10th Cir. 2013). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). When a case has been removed, "the defendant is required to prove jurisdictional facts by a 'preponderance of the evidence' such that the amount in controversy may exceed $75,000." *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008) (citation and internal quotation marks omitted). Nevertheless, "the removing defendant, as proponent of federal jurisdiction, must establish what the plaintiff stands to recover." *Id.* at 954 (citation omitted).

A matter may be remanded back to state court if the federal court lacks subject matter jurisdiction (such as diversity jurisdiction). 28 U.S.C. § 1447(c). "[T]here are two types of improperly removed cases: those in which the federal court has no subject matter jurisdiction and those with defects in the removal procedure itself." *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1076 (10th Cir. 1999) (citation omitted). A defendant must remove a case within thirty (30) days "after receipt by the defendant [. . .] of a copy of an amended pleading, motion, order, or *other paper* from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b) (emphasis added).

"[T]he key to determining the date from which the clock begins to run is when the defendant is able to intelligently ascertain removability." *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1036 (10th Cir. 1998) (citation and internal quotation marks omitted). The Tenth Circuit does not "impose a duty to investigate and determine removability where the initial pleading

3

indicates that the right to remove may exist." *Id.* (citation and internal quotation marks omitted). The Tenth Circuit "requires clear and unequivocal notice from the pleading itself, or a subsequent 'other paper' such as an answer to interrogatory." *Id.* (quotation marks in original). Furthermore, a statement of damages need not be explicit; rather, a defendant may rely on an estimate of the potential damages from the allegations in the complaint. For example, a Defendant may remove a case based on a reading of the face of the complaint even though the complaint did not specify the numerical value of the damage claim. *McPhail v. Deere & Co.,* 529 F.3d 947, 955-56 (10th Cir. 2008) (citing *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir.1999)).

In any event, a case may not be removed based on diversity jurisdiction "more than 1 year after commencement of the action, unless the district court finds the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id.* § 1446(c)(1). "The failure to comply with these express statutory requirements for removal can fairly be said to render the removal 'defective' and justify a remand." *Huffman*, 194 F.3d at 1077 (citation and internal quotation marks omitted).

## DISCUSSION

The first issue this Court must resolve is whether Defendants filed their notice of removal in a timely manner under 28 U.S.C. § 1446. Plaintiff filed the Complaint in state court on March 29, 2017, Defendants took the Plaintiff's deposition on March 20, 2018, and Defendants removed on March 28, 2018. Thus, the Defendants did remove the case just under one year from commencement of the action in accordance with Section 1446(c)(1). Less clear is whether the Defendants removed the case within 30 days of their receipt of "an amended pleading, motion, order, or other paper" from which it was first ascertainable that the case was removable. 18 U.S.C. § 1446(b)(3). Here, that question centers upon the question of when Defendants were in possession

4

of information from the pleadings and discovery that would enable them to intelligently ascertain that the jurisdictional amount of $75,000 was satisfied. The Tenth Circuit has held that one may ascertain the amount in controversy through "contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands." *McPhail*, 529 F.3d at 954 (alterations in original, citation omitted). "The list is not exclusive." *Id.* (citation omitted).

The parties do not dispute that the amount in controversy in this case does in fact exceed $75,000. Rather, the parties disagree on the date when Defendants would have been able to calculate that the amount in controversy exceeded $75,000 to make the case removable, at which point the 30-day time limit started to run. Defendants argue that initially they were not aware of the amount that Plaintiff sought in damages because Plaintiff's complaint did not allege a specific amount that she was seeking, nor did it allege that Plaintiff was seeking lost wages or emotional distress damages. [Doc. 1 at 2]. Thus, Defendants contend that the case was not removable until Plaintiff's deposition on March 20, 2018. *Huffman*, 194 F.3d at 1078 (holding that the 30-day time limit starts ticking once comments are made at the deposition, not upon receipt of the transcript). Defendants allege that during this deposition they learned for the first time that Plaintiff was seeking "at least" $28,000 in lost wages, and that based on this comment Defendants were able to properly calculate that the total amount in controversy exceeded $75,000.[1]

---

[1] Defendants elected not to support their argument with excerpts from Plaintiff's deposition, so the Court cannot verify these allegations. However, Plaintiff does not dispute that she made statements to this effect about her lost wages during her deposition.

On the other hand, Plaintiff argues that the case was removable more than 30 days before the March 28, 2018 removal based on information contained in her complaint, her answers to interrogatories, correspondence, and tax documents she provided to Defendants during discovery. *See Akin*, 156 F.3d at 1036 (holding that answer to interrogatory was other paper that made case removable); *Huffman*, 194 F.3d at 1079 (explaining that a combination of materials can help the defendant "intelligently ascertain removability."). Plaintiff points out that with the exception of the amount of lost wages she is claiming, Defendants discovered nothing new at her deposition regarding the amount in controversy, and that the information available to Defendants through discovery and pleadings before the deposition indicated that the amount in controversy was satisfied.

The Court will address each element of damages in turn. First, in her answers to Defendants' interrogatories [Doc. 10-1], which she provided to Defendants on October 9, 2017, Plaintiff stated that she was making "$13.00 per hour while employed with [M]axim," and that she "was out of work for approximately four (4) to six (6) months." [Doc. 19 at 5]. Thus, Plaintiff asserts that Defendants could have calculated that she would be seeking a minimum of $7,280 to $10,920 in backpay based on a thirty-five-hour work week. The Court, however, concludes that based on Plaintiff's answer the Defendants could have assumed that Plaintiff was seeking $11,830 in damages. The Court arrives at this number by multiplying $13 per hour, for 35 hours per week, for 26 weeks (six months).

Second, in her Complaint Plaintiff asserted an emotional distress claim. *See* Doc. 1-1 at 6 of 10 (Count I). In addition, Plaintiff's letter to Defendant on December 11, 2017 [Doc. 9-1 at 2] expressly stated that she is making a "garden variety" emotional distress claim. Thus, Defendants cannot be heard to complain that they were not aware of the emotional distress claim until the

On the other hand, Plaintiff argues that the case was removable more than 30 days before the March 28, 2018 removal based on information contained in her complaint, her answers to interrogatories, correspondence, and tax documents she provided to Defendants during discovery. *See Akin*, 156 F.3d at 1036 (holding that answer to interrogatory was other paper that made case removable); *Huffman*, 194 F.3d at 1079 (explaining that a combination of materials can help the defendant "intelligently ascertain removability."). Plaintiff points out that with the exception of the amount of lost wages she is claiming, Defendants discovered nothing new at her deposition regarding the amount in controversy, and that the information available to Defendants through discovery and pleadings before the deposition indicated that the amount in controversy was satisfied.

The Court will address each element of damages in turn. First, in her answers to Defendants' interrogatories [Doc. 10-1], which she provided to Defendants on October 9, 2017, Plaintiff stated that she was making "$13.00 per hour while employed with [M]axim," and that she "was out of work for approximately four (4) to six (6) months." [Doc. 19 at 5]. Thus, Plaintiff asserts that Defendants could have calculated that she would be seeking a minimum of $7,280 to $10,920 in backpay based on a thirty-five-hour work week. The Court, however, concludes that based on Plaintiff's answer the Defendants could have assumed that Plaintiff was seeking $11,830 in damages. The Court arrives at this number by multiplying $13 per hour, for 35 hours per week, for 26 weeks (six months).

Second, in her Complaint Plaintiff asserted an emotional distress claim. *See* Doc. 1-1 at 6 of 10 (Count I). In addition, Plaintiff's letter to Defendant on December 11, 2017 [Doc. 9-1 at 2] expressly stated that she is making a "garden variety" emotional distress claim. Thus, Defendants cannot be heard to complain that they were not aware of the emotional distress claim until the

deposition. In their Notice of Removal, Defendants calculate such a claim to be valued at $30,000 based on federal decisions from other districts. Doc. 1 at 5, ¶ 13. Defendants do not assert that this number is based on any new information they obtained at the deposition but is rather one used by courts to value similar claims, so presumably they could have assessed the value of the emotional distress claim from the time they received the Complaint.

Third, in their Notice of Removal Defendants calculate Plaintiff's attorney's fees[2] to be at least $28,000, which is a conservative estimate based on the fact that Defendants had accrued $56,000 in fees at the time of removal. *See* Doc. 1 at 5, ¶ 12. Again, there is nothing in the record to suggest that Defendants could not have estimated these fees in December of 2017 when they received Plaintiff's letter regarding her lost wages.

Fourth, despite Plaintiff's urging, the Court will not consider pre-judgment interest in calculating the jurisdictional amount. Under the diversity statute, 28 U.S.C. § 1332(a), the amount in must be determined "exclusive of interest and costs." Such interest is not counted toward the jurisdictional amount where, as here, it arises solely by virtue of a defendant's delay in paying money owed to a plaintiff. *See State Farm Mut. Auto Ins. Co. v. Narvaez*, 149 F.3d 1269, 1271 (10th Cir. 1998).

Fifth, Defendants do not address the value of Plaintiff's punitive damages claim. As the Supreme Court has noted, punitive damages may be considered in determining the jurisdictional amount. *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003).

---

[2] Attorney's fees may be considered for purposes of determining amount in controversy if the plaintiff may recover those fees as an element of damages as a matter of right—for example, pursuant to statute. *See Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340(10th Cir. 1998). Here, Plaintiff has pled a claim under the New Mexico Human Rights Act, NMSA 1978, 28-1-1 et seq. Section 28-1-13(D) of that statute provides for an award of attorney's fees to a prevailing plaintiff.

In December of 2017 the Defendants had notice that Plaintiff's compensatory damages totaled roughly $42,000 (lost wages of almost $12,000 and emotional distress damages of approximately $30,000), exclusive of attorney's fees. Given those compensatory damages, a conservative estimate of a jury's punitive damages award is at least $25,000.[3] Again, Defendants could have reached this conclusion based upon information available to them in December 2017 from the face of the Complaint and responses to discovery.

In total, based on information the Defendants possessed in December of 2017, they could have intelligently calculated the jurisdictional amount to be in excess of $90,000 because Plaintiff's lost wages, emotional distress, attorney's fees, and punitive damages claims totaled approximately $94,830. Thus, at that time Defendants could have reasonably ascertained that the case was removable. However, they did not remove the case until March 28, 2018, outside the thirty-day time limit.

In response, Defendants argue that they do not have a duty to investigate the value of Plaintiff's claims. Although it is true that Defendants do not have a duty to conduct an independent investigation of that value, they may not ignore information on the face of the Complaint or that they have obtained through the discovery and pretrial process that sheds light on the matter. Further, Defendants do have the burden to demonstrate that their removal is timely. Here, the Defendants assert that they could not have known until Plaintiff's deposition that at least $75,000 was at issue; however, Defendants have failed to provide the Court with any excerpts from the

---

[3] *See Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23 (1991) (holding that, while "the punitive damages award in this case is more than 4 times the amount of compensatory damages" and "may be close to the line," the award "does not cross the line into the area of constitutional impropriety"); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580-81 (1996) (adopting as a "guidepost" the requirement that "exemplary damages must bear a 'reasonable relationship' to compensatory damages").

deposition that show that Plaintiff provided new information that was not previously in Defendants' possession with the exception of the lost wages claim. However, even before that revision Defendants had been provided information demonstrating that the jurisdictional amount was satisfied. The same calculations that Defendants made after the deposition in late March of 2018 could have been made in December of 2017, after they received Plaintiff's answers to their interrogatories. Defendants had in hand Plaintiff's complaint, her tax filings, and the answers to interrogatories which clearly demonstrated how much she lost in wages. *See id.* at 955 (holding that "the defendant may rely on an estimate of the potential damages from the allegations in the complaint[,]" and that "beyond the complaint itself, other documentation can provide the basis for determining the amount in controversy[.]").Consequently, Defendants' argument that they were unable to conclude that the amount in controversy exceeded $75,000 until Plaintiff's deposition is unpersuasive.

Thus Defendants' removal is untimely, coming more than thirty days after their receipt of a paper from which they could have first ascertained that the case was removable. Having concluded that removal was untimely, the Court need not reach the question of whether Defendant Jeremy Solano was fraudulently joined in order to destroy complete diversity among the parties.

## **CONCLUSION**

In light of the foregoing, the Court concludes that Defendants did not remove the case in a timely matter, and therefore the Court does not have diversity jurisdiction. Accordingly, the Court will remand the case to state district court. Lacking jurisdiction in the case, the Court will not address Plaintiff's motion for leave to amend her complaint or Defendants' motion for leave to amend their answer, both of which remain pending.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand [Doc. 6] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is hereby **REMANDED** to the Second Judicial District Court, County of Bernalillo, New Mexico.

_____
JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE